# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

|  |  |  |
|---|---|---|
| TEXAS MEDICAL ASSOCIATION, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, et al., | ) | |
| | ) | Case No.: 6:22-cv-00372-JDK |
| *Defendants*. | ) | |
| | ) | Lead Consolidated Case |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**DECLARATION OF DR. ADAM CORLEY**

I, Dr. Adam Corley, solemnly declare under penalty of perjury and to the best

of my knowledge, information, and belief as follows:

1.      I am over 18 years of age and with capacity, and I provide this declaration based

on my personal knowledge.

2.      I am an emergency room physician who resides and practices in Tyler, Texas.

3.      I work through Precision Emergency Physicians, PLLC and Banner State

Emergency Physicians.

4.      The majority of my patients are insured by commercial plans.  I treat patients who

receive services covered by the No Surprises Act's ("NSA") rules for out-of-network

reimbursement, including the NSA's balance billing prohibition.

1

5.	Some of the out-of-network services that I provide qualify as "emergency services" covered under the NSA.  I am reimbursed at an hourly rate for my emergency medical services.

6.	I also own a percentage of Hospitality Health ER ("Hospitality Health"), a freestanding emergency department in Tyler, Texas.

7.	Some patients who receive medical treatment at Hospitality Health are covered by commercial plans.  Hospitality Health treats patients who receive services covered by the NSA's rules for out-of-network reimbursement.

8.	I prefer to be in-network with health insurers where possible, but insurance companies do not always offer opportunities to be in-network or to negotiate network agreements with me in good faith.

9.	Since the NSA went into effect on January 1, 2021, both I and Hospitality Health have furnished out-of-network services that are subject to reimbursement through the NSA's IDR process, and I expect that we will both continue to do so.

10.	Claims for my services that are subject to the NSA's rules for out-of-network reimbursement have been submitted through the NSA's Open Negotiation and IDR processes. Hospitality Health has also submitted claims for its emergency services through the NSA's Open Negotiation and IDR processes.

11.	In my experience and through conversations with others who work with the NSA's Open Negotiation and IDR processes on behalf of Hospitality Health and myself, Open Negotiation has rarely resulted in out-of-network insurers offering reasonable reimbursement rates that are consistent with the reimbursement rates they were willing to pay before the NSA went into effect.  As a result, it has been necessary to use IDR to attempt to obtain a reasonable

DocuSign Envelope ID: 0214AFBE-F2D9-4457-B4F4-6682AC9812D8

reimbursement rate.  I expect that claims for my services and emergency services furnished at Hospitality Health will continue to be submitted through the NSA's IDR process.

12.     The IDR bids for my services and emergency services furnished at Hospitality Health are generally higher than the relevant QPA, which is much lower than a reasonable reimbursement rate for the provided services.  Indeed, the QPA will often be well below the true median contracted rate as paid out in the market where I work and where Hospitality Health is located: Tyler, Texas.  The Departments, in fact, recently acknowledged[1] that QPAs can materially differ from relevant median market rates, as a result of insurers inappropriately including rates from physicians in different specialties, or even $0 rates listed in fee schedules.

13.     Furthermore, QPAs often do not accurately reflect the costs I or Hospitality Health incur in providing medical services, including because of geographic disparities, differences in provider training, and differences in patient and case complexity.

14.     The bids submitted by insurers as part of the NSA's IDR process are generally tethered to the relevant QPA and thus are lower and closer to the relevant QPA than the bids for my services or Hospitality Health's services.

15.     Because the Final Rule privileges the QPA during the IDR process, it incentivizes insurers to offer nothing more than the QPA during Open Negotiation, and furthermore to execute terminations, non-renewals, and renewals at 50% or less of their previous rates, as it will be significantly cheaper for insurers to reimburse providers under the NSA's out-of-network reimbursement rules than it will be to contract and offer reasonable network rates.  Many

---

[1] DEP'TS, *FAQs about Affordable Care Act and Consolidated Appropriations Act, 2021 Implementation Part 55* at FAQ 14 (Aug. 19, 2022), *available at* https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/aca-part-55.pdf.

practices will become insolvent.  The ultimate results will be less competition, more

consolidation, fewer independent physician practices, decreased quality of care, and diminished

access to care for Texas patients.

16.     Privileging the QPA will make it more difficult for my or Hospitality Health's

bids to be chosen, in comparison with a process in which the IDR entities can freely consider all

statutory factors without favoring any particular factor.  As such, privileging the QPA will

pressure me and Hospitality Health to lower our bids towards the relevant QPA, which is often

much lower than a reasonable reimbursement rate.  Driving out-of-network reimbursement rates

to the QPA will result in the systematic reduction of out-of-network reimbursement for me and

Hospitality Health, compared to an IDR process that does not privilege the QPA.

17.     Lower reimbursement rates for my and Hospitality Health's services will decrease

my compensation.

18.     In this way, privileging the QPA directly harms my financial interests.

Pursuant to the requirements of 28 U.S.C. section 1746, I declare under penalty of perjury that
the foregoing is true and correct to the best of my knowledge and belief.

Executed on:

10/12/2022

_____

DocuSigned by:

*Dr. Adam Corley*

F74C78D7EDAE418...

Dr. Adam Corley

4